**SO ORDERED.**

**SIGNED this 03 day of April, 2007.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CURTIS E. MURPHY, | ) | **Case No. 05-17923** |
| MICHELLE R. MURPHY, | ) | **Chapter 7** |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MEMORANDUM OPINION

### Nature of Case

The chapter 7 trustee objects to debtors' claim of exemption in causes of action related to

their homestead. Debtors Curtis and Michelle Murphy claim as exempt not only the home they live

in, a mobile home set on land they own, but also several causes of action that they have asserted in

response to National City Mortgage Company's pre-petition foreclosure action filed in state court.

Each of the causes of action relates to alleged defects in the mobile home or deceptive practices

committed by its seller. The trustee objects only to the exemption of the causes of action, not to the

1

exemption of either the mobile home or the land upon which it sits.

The parties filed a detailed stipulation of facts[1] and stipulated to the admission of twelve

exhibits into evidence.  At the start of trial on February 14, 2007, the Trustee stipulated to the

statement of facts set forth in Debtors' trial brief thereby dispensing with the presentation of

evidence.[2]   The Court then heard oral argument on this matter and, after careful consideration of

the parties' submissions, is prepared to rule.

### Jurisdiction

Objections to claims of exemptions are contested, core proceedings over which this Court

has subject matter jurisdiction.[3]

### Findings of Fact

Carl B. Davis is the duly appointed and acting Trustee in bankruptcy of the above-captioned

case filed October 12, 2005.  Defendants Curtis E. Murphy and Michelle R. Murphy ("Debtors"),

are individuals residing on certain real estate located at 11130 N. Meridian St., Valley Center,

Kansas 67147, and legally described as:

> Beginning at a point 790 feet north of the Southwest Corner of Section 7, Township
> 25 South, Range 1 East of the 6th P.M., Sedgwick County, Kansas, thence North
> along the West line of said section 375 feet; thence East at right angles, 285 feet;
> thence South 375 feet; thence West 285 feet to beginning.

A mobile home has been set on this real estate and the debtors live in it.  Debtors closed on

the purchase of this mobile home from ARC Dealership, LLC d/b/a Factory Outlet Homes ("ARC")

in 2004, giving a mortgage to National City Mortgage Company.

---

[1]  Dkt. 42.

[2]  Dkt. 46.

[3]  28 U.S.C. § 157(b)(1) and (b)(2)(B) and § 1334(b); Fed. R. Bankr. P. 4003 and 9014.

Because of alleged problems and defects in the mobile home, Debtors ceased making mortgage payments to National City Mortgage and revoked acceptance of the mobile home on January 19, 2005. As a result of nonpayment, National City Mortgage commenced a foreclosure action in January, 2005. The Trustee has exercised his lien avoidance powers with respect to the mobile home, alleging that National City Mortgage failed to properly perfect its security interest in the mobile home and consequently the lien is unperfected.[4]

In their bankruptcy, the Debtors have claimed the above-described real property and the mobile home as their exempt homestead pursuant to KAN. STAT. ANN. § 60-2301(2005). Neither the Trustee nor any other party has objected to this particular exemption claim and the real property and mobile home are exempt. The Debtors also claim exempt on Schedule C, "Other Contingent and Unliquidated Claims of Every Nature" pursuant to the same homestead exemption. They value this exemption at $130,000 and more particularly describe it as follows:

> Debtors have a counterclaim against National City Mortgage Co. and claims against ARC Dealership, LLC d/b/a Factory Outlet Homes, Factory Outlet Homes, LLC and Shult Homes for $130,000.00 arising out of breach of warranty and revocation of acceptance as to debtor's homestead.

The Trustee timely filed an objection to this claimed exemption.[5]

The claim of National City Mortgage Company is the subject of a foreclosure case commenced January 10, 2005 in Sedgwick County District Court, Case No. 05 CV 0148 ("Foreclosure").[6] The Debtors have filed an Answer, Counterclaim and Third-Party Petition in the

---

[4] Adv. Pro. 05-5901, filed December 19, 2005. *See* 11 U.S.C. § 544(a).

[5] Dkt. 8.

[6] Ex. 11.

3

Foreclosure.[7]  These claims contained in the Answer, Counterclaim and Third Party Petition and the

heretofore unasserted claims against Factory Outlet Homes, LLC, and HBOS d/b/a Schulte Homes

are the "other contingent and unliquidated claims of every nature" included on Schedule C.[8]  As of

the date of the bankruptcy filing, those claims remained pending in the Foreclosure.   The Debtors

asserted counterclaims against National City Mortgage Company and third party claims against

ARC, the retail seller of the mobile home.

More specifically, Debtors claim that ARC committed deceptive acts that violate the Kansas

Consumer Protection Act ("KCPA")[9] and entitle them to actual damages or civil penalties, along

with attorneys' fees.  They also assert that ARC breached the implied warranty of merchantability

in KAN. STAT. ANN. § 84-2-314 (1996) and are accountable in damages for necessary repairs to the

home.  The Debtors assert that they have revoked acceptance of the mobile home under KAN. STAT.

ANN. § 84-2-608 (1996) and are entitled to a return of the sale price and to retain a security interest

in the home to secure repayment of the price under KAN. STAT. ANN. § 84-2-711(3) (1996).  They

also assert that because ARC never provided them with a certificate of title to the mobile home, the

transaction is void as being fraudulent under KAN. STAT. ANN. § 58-4204(h)(2005).  Debtors'

counterclaims against National City, set up all of these claims as defenses to the foreclosure petition.

---

[7]  Ex. 12.

[8]  The Court observes that ARC Dealership, LLC d/b/a Factory Outlet Homes [the retail seller] is the only named third party defendant against whom Debtors assert their third party petition. The manufacturer of the home, HBOS d/b/a Schulte Homes, and Factory Outlet Homes, LLC are not named third party defendants in that pleading. *See* Ex. 12.  It is not apparent from the record before this Court that Debtors subsequently amended their third party petition to join Schulte and Factory Outlet Homes, LLC as third party defendants in the Foreclosure as Debtors' Schedule C would suggest.  This point of clarification, however,  has no bearing on the Court's analysis or conclusion.

[9]  KAN. STAT. ANN. § 50-623, *et seq*.(2005).

4

In their trial brief, Debtors state that they intend to use any monetary recovery from their asserted claims in the Foreclosure to repair or replace the mobile home.[10]

The Debtors contend the homestead exemption applies to the causes of action, comparing any recovery they may obtain on their claims to insurance proceeds on an exempt asset. They argue that the proceeds are equally exempt, so long as they intend to reinvest the proceeds in the exempt asset and carry out that intent within a reasonable time. The Trustee argues that the homestead exemption does not encompass causes of action and the case law does not expand the homestead exemption to reach these types of claims. He further argues that the claims relating to Debtors' homestead are not proceeds of the homestead.

**Analysis**

The Trustee, as the party objecting to the claimed exemption, bears the burden of proving by a preponderance of the evidence that the exemption is improper.[11] Because Kansas has opted out of the federal bankruptcy exemption scheme, the Debtors claim the homestead exemption under Kansas law.[12] Thus, this Court looks to Kansas law to determine the validity of the claimed homestead exemption.[13]

Both the Kansas Constitution and the Kansas Statutes provide for the reservation of a one acre homestead within an incorporated town or city, including a mobile or manufactured home to be "occupied as a residence by the owner or the family of the owner . . . together with all the

---

[10] Dkt. 46, p. 3.

[11] *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005); Fed. R. Bankr. P. 4003(c).

[12] *Id.* at 1009; KAN. STAT. ANN. § 60-2312 (2005).

[13] *Id., citing In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003).

5

improvements on the same" from any forced sale.[14]   This reservation is without value limitation. The purpose of the homestead provision is to "zealously protect[] the family rights in homestead property by liberally construing the homestead provision in order to safeguard its humanitarian and soundly social and economic purposes."[15]

Debtors seek to exempt their causes of action relating to the homestead as a part of their homestead.  The Trustee asserts that none of the causes of action is sufficiently related to the homestead as to enjoy its protections.  He also argues that neither the Kansas Constitution nor the statute extend the exemption to these causes of action.  There are no Kansas state law cases on point, but the Court may predict from the state law how a Kansas court might interpret the homestead provisions if faced with a similar question.  In order to do so, the Court briefly considers the nature of each of the causes of action.

The KCPA claim involves an assertion by debtors that ARC made numerous misrepresentations leading up to the sale of the mobile home and that these misrepresentations amount to deceptive practices under the Act.[16]  A consumer's remedies under the KCPA include collecting the greater of his actual damages or a civil penalty.[17]  The maximum civil penalty is $10,000 per violation.[18]  These debtors claim actual damages of $50,000 and a civil penalty for each

---

[14]  *See* KAN. CONST. art. 9, § 15 and KAN. STAT. ANN. § 60-2301.

[15]  *State ex rel. Apt. v. Mitchell*, 194 Kan. 463, 466, 399 P.2d 556 (1965).

[16]  Ex. 12, pp. 3-5; KAN. STAT. ANN. § 50-626(b) (2005) (inclusive list of deceptive acts and practices).

[17]  KAN. STAT. ANN. § 50-634(b) (2005).

[18]  KAN. STAT. ANN. § 50-636(a) (2005).

6

violation of the Act.[19]  All of the violations asserted relate to representations made by ARC to the

Debtors in the purchase of the home.  Those representations allegedly included statements, among

others:  (1) that the home would be a "stick-built " modular home and not a double-wide mobile

home; (2) that the home would be built and installed in two months when it took eight months; (3)

that the home passed the county building inspection when it had not; (4) that the heat was

operational when it was not; and (5) that the home was covered by a five year manufacturer's

warranty when, in fact, many of its components were not warranted for that length of time.  If they

prevail, the debtors would also be entitled to recover their attorney's fees.[20]

The debtors claim that ARC breached the implied warranty of merchantability inherent in

a contract for the sale of goods under KAN. STAT. ANN. § 84-2-314(2).[21]  In order for goods to be

merchantable, they must be "fit for the ordinary purposes for which such goods are used."  The

implied warranty claim recites numerous physical defects in the home that require repair or

replacement.    This claim is necessarily one for damages[22] and KAN. STAT. ANN. § 84-2-715

provides that a buyer may also recover incidental and consequential damages in an appropriate case.


Next, the debtors claim that they revoked their acceptance of the mobile home predicated

upon the home being non-conforming and of substantially impaired value as set out in KAN. STAT.

---

[19]  Ex. 12, ¶ 30.

[20]  KAN. STAT. ANN. § 50-634(e) (2005).

[21]  Ex. 12, Count II.

[22]  *See* KAN. STAT. ANN. § 84-2-714(2) (standard measure of damages for breach of warranty stated).

7

ANN. § 84-2-608(1).[23] The buyer's remedy for revocation of acceptance is set out in KAN. STAT. ANN. § 84-2-711(1). Under this section, the buyer is entitled to cancel and recover the price he has paid for the non-conforming goods, an amount that Debtors allege is in excess of $130,000. As security for return of the price as well as payment of any costs he incurs for inspection, care and custody of the mobile home, the buyer retains a security interest in the mobile home until paid.[24]

The final cause asserted by Debtors seeks a declaration by the court that the sale transaction is void because ARC did not provide them with a certificate of title as required by KAN. STAT. ANN. § 58-4204(h).[25] That section provides, inter alia, that when a seller fails to provide a certificate of title within 30 days, the sale is presumed fraudulent and, therefore, is void. If the sale is void, then presumably the Debtors would be required to return the mobile home and, in exchange, receive a return of the consideration they paid for it, an amount that Debtors contend is in excess of $130,000. These funds would be paid, in turn, to the holder of National City's lien. This claim appears to seek a remedy that is similar to, if not duplicative of, the commercial revocation remedy discussed immediately above.

No Kansas appellate courts have considered whether damage actions of this type arising out of the homestead are exempt. One bankruptcy court in this District has. In *In re Stroble,* Judge Berger considered whether a debtor's recovery of certain illegally assessed mortgage fees and costs from the mortgage lender was exempt and determined that it was.[26]

---

[23] Ex. 12, Count III.

[24] KAN. STAT. ANN. § 84-2-711(3); *See* Ex. 12, Count V.

[25] Ex. 12, Count IV.

[26] Case No. 03-24926, 2005 WL 3844208 (Bankr. D. Kan. Sept. 7, 2005) (settlement in nature of restitution received by debtors for mortgage lender's violations of the Kansas

> Because the damage suffered by the Strobles resulted from Household's alleged abusive mortgage lending practices regarding loan points and origination fees, interest rates, monthly payment amounts, prepayment amounts, balloon payments, etc., it is appropriate to classify the Settlement as reflecting restitution for an impairment of equity.[27]

In reaching that conclusion, Judge Berger stated "the equitable considerations warranting the protection of homestead proceeds and the application of the equitable conversion doctrine are present."[28]  He relied on the Tenth Circuit's opinion in *In re Hodes*, a case in which the Court employed the doctrine of equitable conversion to deem exempt funds prepaid by debtors to a contractor for improvements to be made to their homestead.[29]  This authority, while not directly on point, is helpful.

Also helpful are several Kansas Supreme Court cases decided in the 19th Century.  Kansas courts have long employed a variety of legal fictions to extend the protection of the homestead exemption to a homestead's proceeds where the debtor intends the proceeds be used to repair or replace the homestead.[30]  In *Continental Insurance Co. v. Daly*, the Kansas Supreme Court stated that insurance policy proceeds paid a debtor after a fire destroyed his homestead were exempt to the

---

Consumer Protection Act and the Kansas Consumer Credit Code).

[27]  2005 WL 3844208 at * 2.

[28]  *Id.*

[29]  402 F.3d 1005 (10th Cir. 2005).

[30]  *See First Nat'l Bank v. Dempsey*, 135 Kan. 608, 609, 11 P. 2d 735 (1932) (sale proceeds of Kansas homestead are exempt if reinvested in another homestead within a reasonable time); *Smith v. Gore*, 23 Kan. 488, 490 (1880) (homestead exemption extends to sale proceeds provided debtor had formed an intent at the time of sale to use the proceeds to acquire another homestead).

9

extent they were to be employed to rebuild or replace the homestead.[31]

While the causes of action in the present case may not be identical to insurance coverage for a casualty loss, they are somewhat analogous and irretrievably bound up with the Debtors' homestead. The homestead statute, as well as the homestead provision in the Kansas Constitution, guarantees Debtors a dwelling place "for the benefit of the family and of society – to protect the family from destitution, and society from the danger of her citizens becoming paupers."[32] Here, the Debtors expended funds and incurred debt to acquire a homestead that is, according to their state court pleadings, deficient in many ways. By their causes of action, they seek to be restored to the position they paid to be in initially. They seek a non-defective, heated, habitable home. If the insurance proceeds of a burnt-down homestead are exempt as a part of that homestead, then causes of action to enforce implied warranties and the KCPA for defects in a homestead or misconduct in connection with its sale should be exempt as well. The homestead exemption would have little meaning if an action for damages to one's homestead or for misconduct on the part of the homestead's seller were not also exempt.[33]

The Trustee also argued that the Debtors' causes of action to revoke acceptance of the mobile

---

[31] 33 Kan. 601, 7 Pac. 158 (1885). *See also, Mitchell v. Milhoan*, 11 Kan. 617 (1873) (surplus from execution sale of a homestead not subject to execution to satisfy a second judgment that was not a lien on the homestead, so long as the debtor intended to use the surplus to redeem the homestead or purchase another homestead).

[32] *Anderson v. Shannon*, 146 Kan. 704, 711, 73 P.2d 5 (1937).

[33] The Court expresses no opinion concerning whether any attorneys fees that the debtor might recover as a part of a judgment he receives on any of these causes of action make up part of the exemption sustained here today. Attorneys fees are a part of the statutory relief granted in the KCPA, KAN. STAT. ANN. § 50-634(e), and might conceivably be recoverable on the causes of action arising under Article 2 of the UCC. This order merely sustains the debtors' scheduled exemption in the amount of $130,000.

home and declare the sale void for failure to provide a certificate of title are actions to which he should take precedence because he intends to avoid the mortgage lender's allegedly unperfected security interest in the home. The Court disagrees, believing that the only material consequence of Debtors' succeeding upon either the revocation claim or the certificate of title claim would be Debtors' being required to return the mobile home to the dealer or manufacturer and receive a refund of the price. At present, National City Mortgage would have a lien on the returned funds. Whether the actions for damages are exempt or not has no impact on the Trustee's efforts to avoid National City's lien.

The Court can see at least two legal scenarios developing here. The Trustee may succeed in avoiding National City's lien and preserving it for the estate. That lien already attaches to the mobile home in the hands of the Debtors and, if they repair it, the lienholder, be it the estate or the lender, will benefit. Further, whoever winds up with the lien may well have an equitable lien on the proceeds of the Debtors' causes of action, just as a lienholder would have at least an equitable claim against insurance proceeds.[34] It may also be that the Debtors' claims against ARC also stand as defenses to their obligation to National City Mortgage and their duty to pay either National City Mortgage, or if the Trustee successfully avoids National City's lien, the estate. In that event, the value of the lien may not be very great. And, the trustee may have grounds to object to National City's claim in the bankruptcy case. None of these matters is presently before the Court, but they are mentioned to show that deciding the homestead issue in favor of the Debtors has no real impact on how the Trustee deals with the lender in the case. Even if the sale transaction is fraudulent for lack of a title certificate or if the Debtors have validly revoked acceptance, they presently retain an

---

[34] *Chipman v. Carroll*, 53 Kan. 163, 35 Pac. 1109 (1894) (dictum).

11

exempt possessory interest in the mobile home that is a part of their homestead.

The Trustee's objection to the Debtors' claim of a homestead exemption in the causes of action arising out of their homestead is therefore OVERRULED.  Debtors' claimed homestead exemption in the causes of action asserted in connection with the purchase of their mobile home is allowed in the scheduled amount of $130,000.

# # #